IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL THOMPSON individually and as Trustee of the Michael Louis Thompson Revocable Trust U/A/D May 1, 2013, <br><br> Plaintiff, <br><br> v. <br><br> JEFFREY GERTLER and RICHARD GERTLER, <br><br> Defendants. | Case No. 23-cv-02480 <br><br> Judge Mary M. Rowland |
| MICHAEL THOMPSON individually and as Trustee of the Michael Louis Thompson Revocable Trust U/A/D May 1, 2013, <br><br> Plaintiff, <br><br> v. <br><br> JK GERTLER HOLDINGS LLC and RA GERTLER HOLDINGS, LLC, <br><br> Defendants. | Case No. 23-cv-02481 <br><br> Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael Thompson, individually and as trustee of the Michael Louis Thompson Revocable Trust sues Defendants Jeffrey Gertler, Richard Gertler, in case number 23-cv-02480 and JK Holdings LLC, and RA Holdings LLC in case number 23-cv02481 based on their conduct as members of Scrap Metal Services, LLC ("SMS").

1

Plaintiff alleges four counts in 23-cv-02480: breach of contract against both Defendants on behalf of Thompson in Count I; breach of contract against both Defendants on behalf of Plaintiff as Trustee in Count II; breach of fiduciary duty against both Defendants on behalf of Thompson in Count III and breach of fiduciary duty on behalf of the Plaintiff as Trustee against both defendants in Count IV. Plaintiff seeks judgment against Defendants for the improper payments of SMS funds, improper payments to Defendants, reduction in value of the Trustee's membership shares in SMS, and punitive damages. [1].

Plaintiffs allege all three counts against the two named Defendants in 23-cv-02481: disassociation pursuant to the Illinois LLC Act on behalf of Thompson in Count I; breach of contract on behalf of Thompson in Count II; and breach of fiduciary duty on behalf of the Plaintiff as Trustee. Plaintiff seeks judgment against Defendants for the improper payments of SMS funds, improper payments to Defendants, reduction in value of the Trustee's membership shares in SMS, and punitive damages.

For the reasons stated herein, Defendants' motions to dismiss [16]; [20][1] are granted.

---

[1] The cases are consolidated because they involve common issues of law, arise out of the same transactions, and share the same set of facts. *See e.g.* [17] (Case No. 23-cv-02480). To avoid confusion, the Court cites filings from Case No. 23-cv-02481. The motion to dismiss is docket entry [16] in Case No. 23-cv-02480. That motion is granted for the same reasons as the reasons described here.

2

I.   **Background**

The following factual allegations are taken from the Complaint [1] and are accepted as true for the purposes of the motion to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Michael Thompson, as Trustee of the Michael Louis Thompson Revocable Trust U/A/D May 1, 2013 (the "Trust"), is a member of SMS. *Id.* ¶ 1. He is neither an employee nor involved in management or operations of SMS. *Id.* Individually, he is a creditor, and SMS owes him more than $3,500,000. *Id.* Thompson is a citizen of Indiana. *Id.* at ¶ 4. JK Gertler Holdings LLC ("JK Gertler") and RA Gertler Holdings LLC ("RA Gertler") are also members of SMS. *Id.* ¶¶ 2-3. JK Gertler is a citizen of Illinois. *Id.* ¶ 4. Its only member is Jeffrey Gertler, who resides in Flossmoor, Illinois and is domiciled in Illinois. *Id.* RA Gertler is citizen of Illinois. *Id.* ¶ 4. Its only member is Richard Gertler, who resides in Chicago, Illinois and is also a citizen of Illinois. *Id.* SMS is an Illinois manager-managed LLC. [1-1] at 1.

Thompson, Jeffrey Gertler, Richard Gertler and another individual, Jerry Corcoran, Jr. ("Corcoran"), were the original members of SMS. [1] ¶ 7. At some point, Thompson transferred his membership interest in SMS to himself as Trustee on behalf of the trust. *Id.* ¶ 8. The ownership shares of the various members are currently in dispute. *Id.* ¶ 11. Jeffrey and Richard Gertler (the "Gertlers") are the managers of SMS and have been the sole managers since 2007. *Id.* ¶ 12. The Gertlers must agree to a course of action for SMS to act. *Id.* ¶ 13.

3

SMS is governed pursuant to the Second Amended and Restated Operating Agreement ("Operating Agreement") of Scrap Metal Services, LLC, that Thompson, Corcoran and the Gertlers entered in approximately July 2007. *Id.* ¶ 14. This Agreement was amended in April 2011. *Id.* ¶ 15. Neither Thompson nor Corcoran have had any input as to Jeffrey and Richard Gertler remaining as the sole managers. *Id.* ¶ 19.

a. *Plaintiff's Notes and Subordination Agreements*

Between August 2012 and May 2017, SMS issued several notes payable to Thompson ("Thompson notes"). *Id.* ¶¶ 21-23. SMS has not paid the notes[2] and $2,547,000 in principal plus interest remains outstanding. *Id.* Because of SMS's financial condition, to allow SMS to maintain its debt to a third-party financial institution, Thompson entered into Subordination Agreements. *Id.* Based on the Gertlers' assertions, Thompson extended the Subordination Agreements. *Id.* ¶ 25.

Pursuant to the Subordination Agreements, SMS was permitted to pay the interest on the $980,000 and $217,000 Notes at a prime interest rate if the senior debt was not in default. *Id.* ¶ 26. Pursuant to the Subordination Agreements, SMS was also permitted to pay interest on the $1,350,000 Note so long as the senior debt was not in default. *Id.* ¶ 29. Moreover, SMS would not have gone into default if it had paid the required interest on the notes. *Id.* ¶¶ 28; 31. In addition to making interest payments, SMS was able to make principal payments on the $980,000 and $217,000 notes so long as the "payment conditions" were met. *Id.* ¶ 32. Pursuant to the

---

[2] The first Note is in the amount of $980,000; the second Note is in the amount of $1,350,000; and the final Note is in the amount of $217,000. *Id.* ¶¶ 21-23.

4

Subordination Agreements, SMS could have also paid quarterly on the $1,350,000 note if SMS provided certain financial calculations were met. *Id.* ¶ 35. The Gertlers did not make any of these payments.

    b. *Gertlers cause SMS to make distributions to members and to make a capital call.*

Pursuant to the Operating Agreement ¶ 7.4(f), SMS cannot make any distribution to its members if SMS has creditors and SMS "would be unable to pay its debts as they become due in the usual course of business" after making the distribution. *Id.* ¶ 20. Despite that provision, the Gertlers caused SMS to transfer $1,111,364.96 of SMS's funds to SMS's members as distributions in 2019.[3] *Id.* ¶ 41. Again in 2022, the Gertlers transferred $1,766,145.96 of SMS's funds to its members as distributions.[4] *Id.* ¶ 43. The Gertlers have authorized additional distributions to SMS's members while the Thompson notes remain unpaid. *Id.* ¶ 46. The Gertlers have transferred funds directly, and indirectly, to themselves through other entities they own or control between 2018 to the present, including transfers for less than fair value received by SMS. *Id.* ¶ 47. By failing to pay the Thompson notes, SMS failed to pay its creditor in the usual course of business, despite having made distributions to its members. *Id.* ¶¶ 38-40.

In 2019, the Gertlers caused SMS to make a $5,700,000 capital call. It related to a settlement between SMS and a minority owner of a business in which SMS had

---

[3] The Gertlers indirectly paid themselves more than 74% of SMS's funds. *Id.* ¶ 42.

[4] The Gertlers indirectly paid themselves, through their ownership of JK Holdings and RA Holdings, more than 95% of SMS's funds distributed to SMS's members related to a particular transaction, the Foremex Buyers Sale. *Id.* ¶ 45.

5

acquired the majority ownership position. *Id*. ¶ 48. The settlement was necessitated by the Gertlers' conduct against the minority owner. *Id*. ¶ 49. After the settlement, the Gertlers told Thompson that SMS was *effectively worthless*, greatly reducing Thompson's ownership interest in the company. *Id*. ¶ 50. Jeffrey and Richard Gertler ended their employment with SMS, becoming solely managers around the time of the settlement. *Id*. ¶¶ 52-55.

Thompson seeks compensatory and punitive damages for the alleged misconduct. Before the Court is Defendants' motion to dismiss Thompson's complaint under Fed. R. Civ. Pro. 12(b)(7) for failure to join a party pursuant to Rule 19.[5] *See* [16]; [20].

## II. Standard

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). Rule 12(b)(7) permits dismissal where a party fails to join a party pursuant to Rule 19. District courts perform a two-step analysis under Rule 19 to determine (1) whether an unnamed party is necessary to a case, and therefore must be joined, and (2) whether the action should be dismissed if the party is not joined. *Askew v. Sheriff of Cook Cnty., Ill*, 568 F.3d 632, 635 (7th Cir. 2009). Where a party is indispensable and cannot be joined because it would defeat diversity jurisdiction, Rule 19(b) requires dismissal. *Hansen v. Peoples Bank of Bloomington*, 594 F.2d 1149, 1150-51 (7th Cir. 1979); *see also Ross*

---

[5] Defendants also move under Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim, but the Court does not address the merits of the claims (including whether Thompson has properly alleged an individual claim) since the matter is dismissed on jurisdictional grounds.

*v. Bernhard*, 396 U.S. 531, 538 (1970) (reasoning if the necessary company cannot be joined in a derivative suit, it must be dismissed).

### III. SMS is an indispensable party.

Defendants assert that SMS is an indispensable party because Thompson's claims are derivative claims that belong to SMS and that adding SMS defeats diversity jurisdiction.[6] The Court agrees. To determine whether a claim is derivative or individual, courts must focus on the nature of the injury alleged. *See Small v. Sussman*, 713 N.E.2d 1216 (Ill. App. Ct. 1999). If the only injury is to the corporation, the shareholder must bring a derivative claim; the claim cannot be brought by the individual. *Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 160 (7th Cir. 1996). Put another way, if the only injury to the shareholder is an indirect harm consisting of diminution in value of his corporate shares resulting from the impairment of corporate assets, a shareholder cannot bring an individual claim. *Hamilton v. Conley*, 827 N.E.2d 949, 955 (Ill. App. Ct. 2005). Self-dealing, involving an officer disposing of corporate assets for his or her gain, is a classic derivative claim. *Id.* at 1054.

Here, Thompson alleges that the Gertlers failed to abide by the terms of the Operating Agreement, causing SMS's breach and failure to pay its creditors in the ordinary course of business. Thompson further alleges that the Gertlers settled a lawsuit—again based on misconduct by the Gertlers—that resulted in a capital call

---

[6] The parties agree that SMS is an Illinois LLC, and if joined as an indispensable party would defeat diversity jurisdiction. *See* [1] Ex. 1, Operating Agreement at 1 (establishing SMS "under and pursuant to the provisions of the Illinois Limited Liability Company Act..."). The Operating Agreement is attached to the Complaint as Exhibit 1. The Court can consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice" when ruling on a motion to dismiss under 12(b)(6). *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (citing Fed. R. Civ. P. 10(c)).

and diminished the value of SMS to the point where it was *effectively worthless*. He also alleges that the Gertlers improperly made distributions from SMS, essentially causing default on loans. These claims are not unique to him. It is well established that "proper derivative actions include claims for a general partner's mismanagement, negligence, diversion of assets, action beyond authority, and failure to perform elements of an agreement." *Id*. That is the case here.

The cases cited by Thompson are not persuasive. Those cases stand for the proposition that Thompson can bring both a derivative and individual action from the same nucleus of fact. *Spillyards*, 662 N.E.2d at 1363; *Elmhurst Consulting, LLC v. Gibson*, 219 F.R.D 125, 127 (N.D Ill. 2003); *Levy v. Markal Sales Corp.*, 643 N.E.2d 1206, 1218 (Ill. App. Ct. 2004). *Bagdon v. Bridgestone/Firestone, Inc.,* 916 F.2d 379 (7th Cir. 1990), is instructive. The plaintiff, a minority shareholder, alleged the majority shareholder competed unfairly against him and defrauded him of certain benefits. It was undisputed that joinder of the store-corporation as a defendant was a "jurisdictional spoiler." *Id*. at 381. The *Bagdon* court acknowledged that Plaintiff could pursue some claims without adding the corporation (e.g., the loss of benefits) since a "single series of events" can give rise "to both direct and derivative litigation." *Id*. However, the plaintiff also included a demand for damages "on account of the reduction in corporate profits" that were derivative in nature. *Id*. The *Bagdon* court therefore found "the corporation is an indispensable party", destroying diversity and mandating dismissal of the case. *Id*.

In this case, Thompson has chosen not to pursue his *individual claims* based on the breach of the Subordination Agreements. Thompson's claims as alleged here are limited to asserting that the Gertlers made improper distributions, enriched themselves, and made an improper capital call. Those actions injured SMS by diminishing its assets. Those claims make SMS an indispensable party plaintiff to those allegations—Thompson may not assert them individually. When SMS is necessarily and properly joined as a party plaintiff, diversity will no longer exist, requiring dismissal of the case. *See Burger King Corp., v. Am. Nat. Bank & Tr. Co. of Chicago*, 119 F.R.D. 672, 680 (N.D. Ill. 1980) (finding that the franchisee was an indispensable party, destroying diversity and necessitating dismissal of the case).

Thompson argues unpersuasively that SMS is not a party to the Operating Agreement, and the Court can proceed without it consistent with equity and good conscience. [23] at 5-7. Thompson reasons that he wants to recover from the Gertlers, not SMS, so there is no need to add SMS. This argument ignores the entire body of caselaw and its focus on the *injury* alleged. The complaints assert that the Gertlers violated the Operating Agreement, thereby injuring SMS—essentially gutting it. That makes SMS indispensable to this action: it is SMS's claim. Dismissal is required.

The Court therefore dismisses the suit for failure to join a necessary party under Rule 19.

## IV. Conclusion

For the stated reasons, Defendants' motions to dismiss [16]; [20] are granted without prejudice for Thompson to re-file in state court. Both cases are terminated.

E N T E R:

Dated: March 27, 2024

MARY M. ROWLAND
United States District Judge